# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FT. LAUDERDALE DIVISION

CASE NO:

COLE HOLIFIELD, individually and
on behalf of all others similarly situated

    Plaintiff,        **CLASS REPRESENTATION**

vs.                **JURY TRIAL DEMANDED**

DATEFIT, LLC,

    Defendant.
_____/

## CLASS ACTION COMPLAINT

  Plaintiff, COLE HOLIFIELD (hereinafter "Plaintiff"), brings this class action against DATEFIT, LLC (hereinafter "Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., (hereinafter the "TCPA"), the Florida Telephone Solicitation Act, § 501.059 (hereinafter "the FTSA"), and the regulations promulgated thereunder. In support, Plaintiff alleges as follows:

## INTRODUCTION

  1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and all other available legal or equitable remedies, resulting from Defendant's unlawful actions in negligently and/or willfully contacting Plaintiff on Plaintiff's personal residential cellular telephone, thereby invading Plaintiff's privacy.

1

2. To promote and market its services, Defendant, directly or through persons on its behalf, violates Fla. Stat. § 501.059, 47 C.F.R. 64.1200(c) and (d) by failing to honor opt-out instructions, and Florida's Caller Identification ("ID") Rules.

3. Plaintiff and Class Members received unwanted spam telemarketing text messages from Defendant without regard to the FTSA, the TCPA, and for individual privacy. This lawsuit challenges all telemarketing text messages that were sent by Defendant, or on Defendant's behalf, to Plaintiff and Class Members from approximately March 2021, through the date of preliminary approval of class certification.

4. The FTSA and TCPA were designed to prevent telemarketing text messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff and the Class. The Federal Communications Commission (FCC) reports that unwanted calls and texts constitute its top consumer complaint. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Apr. 16, 2021).

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, and supplemental jurisdiction over Plaintiff's state law claims.

6. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendant's transmission of the unlawful and unwanted texts to Plaintiff in this District.

7. Plaintiff resides in Broward County, Florida, where the subject text messages were received, within the jurisdiction of this Court.

8. The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, and has availed itself to the jurisdiction of this state by placing calls to Plaintiff and Class Members in this state.

**PARTIES**

9. Plaintiff's domicile is in Broward County, Florida. Plaintiff is a citizen of the State of Florida.

10. Defendant is a limited liability company with its principal address located at 2400 Superior Ave E Ste 207, Cleveland, Ohio 44114. Based upon information and belief, no individual member of Defendant is a Florida citizen and there is complete diversity between Plaintiff and Defendant.

11. Defendant is a company engaged in retail services, and at all times relevant hereto a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

12. Defendant directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

**FACTUAL ALLEGATIONS**

13. The FTSA's Caller ID Rules require that persons making Telephonic Sales Calls[1] transmit – to the consumer's caller identification service – a telephone number that is capable of

---

1. "Telephonic Sales Call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension

receiving telephone calls. And, unlike claims for damages for text message solicitations the called party does not consent to receive, claims for violations of the Caller ID Rules are equally applicable to all Telephonic Sales Calls (phone calls, text messages, or voicemails), regardless of whether they are solicited or consented to, and irrespective of whether the offending phone call, text message or voicemail is traditional, automated, or recorded.

14. In short, whenever a person either makes any type of Telephonic Sales Call or causes one to be made, that person must ensure that a telephone number is transmitted with that Telephonic Sales Call to the consumer's Caller ID service that is capable of receiving telephone calls and connects to either the telephone solicitor or the Defendant. Whenever Telephonic Sales Call are made and the phone number that is transmitted to the caller identification service is not capable of receiving phone calls and/or does not connect to the caller or seller because it is not configured for two-way communication, the Caller ID Rules have been violated and the aggrieved party may bring an action for liquidated damages, and injunctive and declaratory relief.

15. Plaintiff's telephone number ending in 7144 has received Defendant's Telephonic Sales Calls. This number is used by Plaintiff for residential purposes and is considered by him to be a residential number.

16. Plaintiff's full telephone number will be provided directly to counsel for Defendant in discovery. It is not being provided here, a public document, to prevent further misuse of Plaintiff's telephone number.

---

of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

17. Screen shots of the telemarketing to Plaintiff, including Plaintiff's STOP requests, are depicted below for demonstrative purposes:



18. Defendant transmitted the telemarketing using a phone number, (954) 866-0877, to Plaintiff's cellular number caller identification service. Calls to (954) 866-0877 cannot be completed as dialed because the telephone number is not capable of receiving incoming calls, in violation of the FTSA's Caller ID rules.

19. Moreover, because Defendant continued to solicit Plaintiff despite Plaintiff's multiple STOP requests, it demonstrates both that an automated system was used to transmit the messages, and that phone number (954) 866-0877 was not capable of receiving Plaintiff's incoming messages and removing Plaintiff from Defendant's telemarking list.

20. The selection and dialing of numbers for the texts at issue are done using an automated system because the texts were sent from a phone number used to message consumers en masse; because Defendant's dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making calls/texts without manually dialing the recipients numbers; and because the combination hardware and software system(s) used by Defendant to send such texts have the capacity to both select numbers to be dialed and to dial such numbers in an automated fashion based on predetermined, programmed, or random criteria or settings.

21. Defendant's automated system selects and dials numbers from a lead list of numbers to be dialed without regard to whether those numbers have requested to no longer be contacted. If it was not automated, human intervention would have prevented the texts from being placed to a number that should have been "flagged" as do-not-call.

22. The FTSA's Caller ID Rules require any person "who makes a telephonic sales call or causes a telephonic sales call to be made to … transmit … the originating telephone number," or, as a substitution, "the name of the seller on behalf of which a telephonic sales call is placed and

the seller's customer service telephone number, which is answered during regular business hours" ("Customer Service Number"), to the receipt's caller identification service.

23. Here, with each of Defendant's telemarketing text messages, Defendant transmitted a telephone number to the Caller ID Service of Plaintiff and the Plaintiff Class that was not capable of receiving telephone calls and failed to connect the recipients, including Plaintiff, to the Defendant, as explicitly required by the FTSA's Caller ID Rules.

24. Further, Plaintiff did not provide his prior express written consent or any other party acting on Defendant's behalf to authorize the subject telemarketing text messages. Indeed, prior to making (or knowingly allowing a third party to make on its behalf) the subject telemarketing text messages Defendant lacked a signed written agreement with Plaintiff that complies with the requirements of the TCPA and Fla. Stat. § 501.059(1)(g).

25. In an attempt to opt-out of any further telemarketing text communications with Defendant, Plaintiff on various occasions texted Defendant the word "stop." Defendant ignored Plaintiff's requests and continued to text promotional telemarketing messages despite Plaintiff's clear revocation of any alleged prior consent, including *at least* 4 post-revocation text messages.

26. Defendant failure to honor opt-out instructions by Plaintiff and the Class members is indicative of Defendant's failure to 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

27. To the extent Defendant outsourced its telemarketing spam text messaging campaigns, it is nonetheless liable for texts that violate the TCPA and/or FTSA.

7

28. Defendant is liable for third-party actions if it took steps to cause the telemarketing texts to be made, or if the telemarketing texts were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

29. Defendant had the ability and/or right to control the method and scope of the telemarketing text message campaigns sent to Plaintiff and the Class members.

30. Defendant had the ability and/or right to control the timing and approve, write, and review the content of the telemarketing text message campaigns sent to Plaintiff and the Class members.

31. Defendant authorized the use of its trade name in the telemarketing text messages sent to Plaintiff and the Class members.

32. Defendant knowingly accepted the marketing benefits, or intended to accept the benefits, of the telemarketing text messages sent to Plaintiff and the Class members, including the consumer leads generated through transmissions of the messages.

33. Given Defendant's control over the telemarketing text messaging campaigns at issue and/or its ratification of the campaigns, Defendant is vicariously liable for the violations alleged herein.

34. Defendant failed to keep, maintain, implement, and/or enforce policies and procedures to ensure compliance with the FTSA and TCPA, and/or provide adequate oversight to ensure compliance with any policies it maintained.

35. Compliance with the FTSA will not result in Defendant having to cease its business operations.

36. Compliance with the FTSA will not result in Defendant having to alter the prices of goods or services it provides in the marketplace.

37. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

38. Because Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

39. Plaintiff was the subscriber or customary user of his cellular telephone number that Defendant texted and is financially responsible for phone service, including the cellular costs and data usage incurred as a result of the calls made to Plaintiff by Defendant

40. The telemarketing text messages at issue caused Plaintiff and putative Class Members harm. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction, and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other activities, and violations of their substantive statutory rights under the TCPA and FTSA to remain free of unsolicited calls. The texts are a disruptive nuisance. Not only did the receipt of the text messages distract and take time away from Plaintiff's personal and work activities. *See Drazen v. GoDaddy.com, LLC,* No. 21-10199 (11th Cir. July 24, 2023 (en banc) ("A plaintiff who receives an unwanted, illegal text message suffers a concrete injury"); *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact".... "[A] small injury… is enough for standing purposes");*See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

41. Plaintiff and Class Members had to spend wasted time away from work, family, and personal activities, and suffered aggravation, because of Defendant's unsolicited telemarketing text messages.

42. For example, apart from forcing Plaintiff to spend time investigating the source of the text messages and invest time researching and hiring counsel, Plaintiff received some of the unsolicited telemarketing text messages while he was sharing personal and intimate time with family. This caused Plaintiff to stop to check his phone and waste time reviewing the messages to confirm they were not for an emergency purpose, causing specific injury, trespass, intrusion and disruption onto Plaintiff's personal and daily life.

43. Because Plaintiff and Class Members continued to received telemarketing texts from Defendant after they texted "stop" revoking any conceivable consent, demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this class action under Rule 23(a),(b)(2), and(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and of a similarly situated "Class" or "Class Members" defined as:

> **Internal DNC Class**: All persons within the United States who, within the four years prior to the filing of this Complaint, received any telemarketing text message from or on behalf of Defendant, to said person's cellular telephone number *after* making a request to Defendant to not receive future telemarketing text messages.
>
> **FTSA ID Class**:  All persons and entities in Florida whose caller identification service was transmitted a telephone number that was not capable of receiving telephone calls and/or failed to connect callers to the Defendant's when Defendant's telemarketing calls were transmitted to them since July 1, 2021.

> **FTSA Internal DNC Class:** All persons within the State of Florida who received any text message from or on behalf of Defendant at least 15 days *after* communicating to Defendant that they did not wish to receive text messages by replying to the messages with "stop" or similar opt-out instruction between July 1, 2021, to the date of Class Notice.

45. Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

46. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend, expand, or narrow the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

47. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized spam text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

48. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's texting logs and marketing records.

49. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

50. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a. Whether Defendant initiated telemarketing text messages sent to Plaintiff and Class members;

   b. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent any unsolicited text message(s) (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member's telephone number assigned to a cellular phone service;

   c. Whether the combination of hardware and software used to place the texts constitutes an automated system;

   d. Whether the telephone number used to place the texts is capable of receiving incoming calls;

   e. How Defendant obtained the numbers of Plaintiff and Class members;

   f. Whether Defendant can meet its burden of showing that it had prior express written consent to send such texts;

  g. Whether Defendant willfully or knowingly violated Fla. Stat. § 501.059 and its regulations;

  h. Whether Defendant willfully or knowingly violated 47 C.F.R § 64.1200(d);

  i. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

  j. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

  k. Whether Plaintiff and the Class are entitled to any other relief.

51. One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

52. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the FTSA and TCPA.

53. Plaintiff and members of the Class each received at least one telephonic sales call, advertising Defendant's services without prior express written consent, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

54. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in TCPA litigation and class action litigation.

55. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

56. **Class-Wide Injunctive Relief:** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the Florida Telephone Solicitation Act, and to order Defendant to provide notice to them of their rights

under the Florida Telephone Solicitation Act to statutory damages and to be free from unwanted text messages.

## CAUSES OF ACTION
### COUNT I
### VIOLATIONS OF 47 U.S.C. § 227(c) AND C.F.R. § 64.1200(c)
### (On behalf of Plaintiff and the Internal DNC Class)

57. Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 56 of this Complaint as if set forth verbatim herein.

58. 47 C.F.R. § 64.1200(d), in relevant part, provides: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards including:

> *(1) Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a

consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity. . .

(6) *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

59. Pursuant to 47 C.F.R § 64.1200, the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

60. Plaintiff and others Internal DNC Class members made requests to Defendant not to receive telemarketing text messages from Defendant.

61. Defendant failed to honor Plaintiff's and the Internal DNC Class members opt-out requests.

62. Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

63. Pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each telemarketing text message sent by Defendant. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## COUNT II
### VIOLATIONS OF FLORIDA STATUTE § 501.059(8)
### (On behalf of Plaintiff and the FTSA ID Class)

64. Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 56 of this Complaint as if set forth verbatim herein.

65. Defendant violated the FTSA's Caller ID Rules (Fla. Stat. § 501.059(8)(b)) by placing telemarketing sales calls to Plaintiff and the Class and, in doing so, transmitted to Plaintiff and the Class's caller identification service a telephone number that was not capable of receiving telephone calls and that failed to connect to the Defendant's Callers.

66. Plaintiff and the members of the Plaintiff Class are entitled to a declaration that Defendant's actions, as set out above, violate the FTSA's Caller ID Rules.

67. As a result of Defendant's conduct, and pursuant to Florida Statute § 501.059 (10)(a), Plaintiff and the FTSA ID Class are entitled to an award of $500.00 in statutory damages, for each violation. To the extent Defendant's misconduct is determined to be knowing and/or willful violations of the FTSA, the Court should, pursuant to Fla. Stat. § 501.059(10)(a)(b), treble the amount of statutory damages recoverable by the members of the FTSA ID Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## COUNT III
### VIOLATIONS OF FLORIDA STATUTE § 501.059(5)
### (On behalf of Plaintiff and the FTSA Internal DNC Class)

68. Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 556 of this Complaint as if set forth verbatim herein.

69. It is a violation of the FTSA to initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously

17

communicated to the person that he or she does not wish to receive an outbound call, text message, or voicemail transmission. Fla. Stat. § 501.059(5)(a), (b).

70. Plaintiff and the FTSA Internal DNC Class Members made requests to Defendant not to receive spam telemarketing text messages from Defendant.

71. Defendant failed to honor Plaintiff's and the FTSA Class Members opt-out requests.

72. In violation of the FTSA, Defendant made and/or knowingly allowed outbound telemarketing text messages to Plaintiff and the FTSA Class members, at least 15 days after they had previously communicated to Defendant that they did not wish to receive any text messages from Defendant.

73. As a result of Defendant's conduct, and pursuant to Florida Statute § 501.059(10)(a), Plaintiff and the FTSA Internal DNC Class are entitled to an award of $500.00 in statutory damages, for each violation. To the extent Defendant's misconduct is determined to be knowing and/or willful violations of the FTSA, the Court should, pursuant to Fla. Stat. § 501.059(10)(a)(b), treble the amount of statutory damages recoverable by the members of the FTSA Internal DNC Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of the Class(es), prays for the following relief:

  a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b. An order declaring that Defendant's actions, as set out above, violate the FTSA, and TCPA and its implementing regulations;

c. Statutory damages of $500 per text message, for each FTSA and TCPA violation;

d. Willful damages at $1,500 per text message, for each FTSA and TCPA violation;

e. An injunction prohibiting Defendant from texting numbers without the prior express written consent of the called party;

f. Reasonable attorney's fees and costs; and

g. Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury.

Dated: March 20, 2025                                         Respectfully submitted,

*/s/ Joshua Eggnatz*
Joshua H. Eggnatz, Esq.
Florida Bar No.: 0067926
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: (954) 889-3359
jeggnatz@justiceearned.com

*/s/ Alexander Korolinsky*
Alexander J. Korolinsky, Esq.
Florida Bar No.: 119327
**AJK LEGAL**
1580 Sawgrass Corp Pkwy, Suite 130
Sunrise, Florida 33323
Tel: (888) 815-3350
korolinsky@ajklegal.com

*Counsel for Plaintiff and the Class*